# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5644-17T2

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

J.M.S.,

     Defendant,

and

B.M.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF G.J.S.,

     a Minor.

_____

Submitted May 21, 2019 – Decided May 31, 2019

Before Judges Rothstadt, Gilson and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0042-17.

Joseph E. Krakora, Public Defender, attorney for appellant B.M. (Steven Edward Miklosey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Alicia Y. Bergman, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Olivia Belfatto Crisp, Assistant Deputy Public Defender, on the brief).

PER CURIAM

Defendant B.M. (Benjamin)[1] appeals from a judgment terminating his parental rights to his son, G.J.S. (George), who was born on May 31, 2014. The child's mother, J.M.S. (Jennifer), whose parental rights were terminated during the same proceeding, has not appealed. We find no merit in Benjamin's appeal and affirm.

Benjamin argues that the Division of Child Protection and Permanency (Division) failed to prove prongs three and four of the "best interests of the child" test under N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence.

---

[1] We use fictitious names for B.M., G.J.S., J.M.S., L.A.R., and C.T., to protect their privacy and for ease of reference. See R. 1:38-3(d)(12).

With respect to prong three, Benjamin maintains that the Division did not consider "alternatives to termination of parental rights" because it failed to promptly locate and evaluate relatives for George's placement, including Benjamin's mother, L.A.R. (Lacey). He further asserts that the Division improperly ruled out Lacey as a resource placement, without facilitating a second bonding evaluation. As to prong four, Benjamin claims that the Division did not establish by clear and convincing evidence that termination of his parental rights "will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4).[2]

All of the judge's findings are supported by substantial, credible evidence and, therefore, are entitled to our deference. N.J. Div. of Youth and Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413 (1998). Accordingly, we reject Benjamin's arguments and affirm substantially for the reasons set forth by Judge Rodney Thompson in his comprehensive and well-reasoned forty-eight-page written opinion. We add the following comments.

---

[2] On appeal, Benjamin has not argued that the Division failed to establish prongs one and two of N.J.S.A. 30:4C-15.1(a). Nor has he challenged the court's finding under N.J.S.A. 30:4C-15.1(a)(3) that the Division made "reasonable efforts to provide services to help [him] correct the circumstances which led to the child's placement outside the home." We have nevertheless independently reviewed the record and are satisfied that the Division clearly and convincingly satisfied those statutory elements as well.

Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . . ,' and 'rights far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as being in the interests of the general welfare . . . ." N.J.S.A. 30:4C-1(a); see also In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999).

The constitutional right to the parental relationship, however, is not absolute. N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining whether a parent's rights must be terminated in the child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to

provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604-11.

With respect to Benjamin's challenge to the court's prong three findings, as noted, he asserts that the Division failed to conduct a search for appropriate relative placements. We acknowledge that under N.J.S.A. 30:4C-12.1, the Division may not "embark on a course set for termination of parental rights and adoption by a foster parent without at least first exploring available relative placements." N.J. Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 81 (App. Div. 2013). In this regard, N.J.S.A. 30:4C-12.1(a) requires that once the Division accepts a child into its care or custody, it shall "initiate a search for relatives who may be willing and able to provide the care and support required by the child." Further, "the Division's statutory obligation does not permit willful blindness and inexplicable delay in assessing and approving or

disapproving a relative known to the Division . . . ." <u>N.J. Div. of Youth &</u> <u>Family Servs. v. K.L.W.</u>, 419 N.J. Super. 568, 582 (App. Div. 2011). There is no presumption, however, in favor of relative placement. <u>J.S.</u>, 433 N.J. Super at 82.

Here, three days after George's placement with his resource family, Benjamin provided the Division with the name of C.T. (Cathy), as a potential placement for George.[3] The Division promptly assessed Cathy, and determined that because her boyfriend had two active warrants, George could not be placed in a home with her. Based on this evidence, Judge Thompson concluded that the Division "conducted the necessary checks" before ruling Cathy out.

With respect to Benjamin's contention that the Division failed to appropriately consider Lacey as a relative resource placement, we note that there is no evidence in the record to suggest that the Division knew, or should have known, of Lacey's existence prior to her contact with the Division to identify herself as a prospective relative resource placement. Indeed, as Benjamin concedes, while Lacey provided support to the family after George's birth, she "became estranged shortly afterward" and distanced herself from the family for "many months." As we have previously held, the Division is not expected "to

_____

[3] There is nothing in the record describing Cathy's relationship to the parties.

A-5644-17T2

locate a relative with no information" or "search the fifty states or even the twenty-one counties to identify a parent's siblings, cousins, uncles and aunts." K.L.W., 419 N.J. Super at 582.

As Judge Thompson explained, once Lacey identified herself as a potential relative placement, "[t]he Division conducted the necessary background checks and home assessment, and facilitated visits" between Lacey and George. The Division also assisted Lacey in obtaining a resource license.

The Division thereafter scheduled a bonding evaluation between George and his resource family. The results of that evaluation, conducted by Amy Becker-Mattes, Ph.D., concluded that George's resource mother served as his primary attachment figure and removing George from the resource family's care would be detrimental to his well-being. Additionally, Dr. Becker-Mattes testified at trial that severing George's bond with his resource family "would cause harm that would be ongoing and potentially irreparable." Accordingly, Dr. Becker-Mattes concluded it was in George's best interests not to be removed from their care.

Despite the results of the bonding evaluation with George's resource family, the Division continued to assess Lacey. Indeed, after months of facilitated visits with George, the Division scheduled a bonding evaluation

A-5644-17T2

between Lacey and George. According to the trial record, that evaluation went poorly as George would only permit the Division worker to console him. In light of the bonding evaluation between George and his resource family, the Division issued Lacey a rule-out letter advising her that George would not be placed with her as the Division concluded it would be contrary to George's best interests. See N.J.S.A. 30:4C-12.1(c).[4]

Based on these facts, George's reliance on K.L.W. for the proposition that the Division failed to satisfy prong three is misplaced. In that case, the Division's failed to contact and assess a child's maternal grandparents, whom it knew had custody of the child's siblings, thereby depriving the court of a meaningful opportunity to determine whether the placement was in the child's best interests. K.L.W., 419 N.J. Super. at 581-82. Here, Lacey did not have Benjamin's siblings in her care and custody, nor is there any evidence that the Division had knowledge of Lacey's existence and abjectly failed to consider her as a relative resource placement.

_____

[4] Neither Benjamin nor Lacey requested a best-interests hearing to address the propriety of the Division's rule-out letter. See J.S., 433 N.J. Super. at 83-84. The court, in its prong three findings, however, conscientiously considered all of the evidence, including the unrebutted testimony from Dr. Becker-Mattes that adoption by his resource parents was in George's best interests. Based on that evidence and the court's factual findings, we conclude the Division correctly ruled out Lacey.

Rather, based upon the results of bonding evaluations between Lacey and George, and George and his resource family, the Division concluded it would be contrary to George's best interests to be placed with Lacey. Accordingly, the Division complied with its statutory obligations, and the court's determination was not "made without information relevant to the best interests of the child," as in K.L.W. Id. at 581.

Nor do we find any support in the record that a second bonding evaluation of Lacey was required. Benjamin presented no expert evidence to suggest the initial bonding evaluation was improper, or that there was a serious and enduring bond between Lacey and George. To the contrary, the trial evidence supported the court's conclusion that severing the bond between George and his resource family would cause George ongoing and irreparable harm.

Finally, we also reject Benjamin's challenge to the court's prong four finding. Prong four addresses "whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O., 161 N.J. at 355. Here, Benjamin failed to complete mental health services and substance abuse treatment, remained unemployed without consistent and stable housing, and failed to present any

plan to remedy these issues. Further, he failed to visit George consistently, and did not participate in his scheduled bonding evaluation.

As Judge Thompson explained, there was no evidence that Benjamin could appropriately care for now-four-year-old George. In addition, the court noted that the bonding evaluation with George and his resource family, along with Dr. Becker-Mattes's unrebutted expert testimony at trial, demonstrated a strong, positive bond, "and severing th[at] bond would result in severe and enduring harm" to George.

In sum, after a thorough review of the record, we conclude that Judge Thompson's factual findings are fully supported by the record developed during the four-day trial and, in light of those facts, his legal conclusions as to the best interests of the child test are unassailable. To the extent we have not specifically addressed any of Benjamin's arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION